RENT-A-CAR COMPANY *et al. v.* DEWITT BELFORD.

(*Nashville,* December Term, 1931.)

Opinion filed January 23, 1932.

CANADA, WILLIAMS & RUSSELL, for plaintiff in error.

A. B. PITTMAN, JR., for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The facts material to the issue presented by the appeal in error were stipulated in the circuit court.

The plaintiff, Belford, suffered personal injuries when struck by an automobile owned by the Rent-A-Car Company. The automobile was being driven at a rate of speed in excess of twenty miles an hour by a driver to whom the automobile had been rented by the owner, so as to create in plaintiff a lien on the automobile, under Acts 1929, chapter 87, reenacted by Acts 1931, chapter 82. After the accident, but before suit was brought, the automobile was sold by the Rent-A-Car Company to the Hull-Dobbs-Price Company for $165.20, and the assumption by the purchaser of unpaid purchase money notes, secured by the lien of a conditional vendor. Attachment of the automobile was levied while in the possession of the purchaser, and the purchaser was made a party defendant.

The stipulation does not impeach the good faith of either the seller or the purchaser, and the case was submitted to the circuit court on the theory that the Hull-Dobbs-Price Company was a purchaser in good faith

and without notice of the accident or lien claim of the plaintiff. It was stipulated that the value of the Rent-A-Car Company's equity in the automobile, $165.20, was the limit of the plaintiff's lien claim, and that payment of that amount by either defendant would satisfy a judgment sustaining the lien.

The judgment of the Circuit Court of Shelby County recites its opinion that "a *bona fide* purchaser of an automobile under the circumstances set forth in the stipulation does not have a right superior to the lien of the party injured as a result of the automobile accident, though the suit for the attachment of the car is not brought until after the sale to the *bona fide* purchaser."

Judgment was thereupon rendered against both defendants for the stipulated value of the owner's equity in the automobile, and from this judgment both defendants have appealed in error.

The motion for a new trial in the circuit court questioned only the ruling hereinabove quoted from the judgment, as a basis for rendering judgment against both defendants. The assignments of error here are thus limited.

We quote the language of the statute declaring the lien claimed by plaintiff: "Whenever any suit for damages is brought in any court of competent jurisdiction for injuries to person or property caused by the running of any motor vehicle in excess of 20 miles per hour, there shall be a lien upon such motor vehicle for the satisfaction of such recovery, as the court may award, whether, at the time of the injury, such motor vehicle was driven by the owner thereof, or by his chauffeur, agent, employe, servant, or any other person using same by loan or hire." Acts 1931, chapter 82, section 2.

▮ The lien in issue was first introduced into the law of this State by Acts 1905, chapter 173, section 5, in language substantially like that employed in the Act of 1931. Construing the Act of 1905 in *Keller* v. *Federal Bob Brannon Truck Co.,* 151 Tenn., 427, 440-441, it was said:

"In such case, if the jury finds that the statute has been wilfully violated, it may ascertain and fix the amount of damages which the plaintiff has sustained, and the plaintiff is entitled to have such damages declared a lien upon the offending automobile for their sole satisfaction. An attachment is not necessary to create the lien. This is given by the statute. The office of an attachment is merely to seize the property and place it in the custody of the law. 2 R. C. L., 856."

▮ The nature of the lien was considered at some length in *Parker-Harris Co.* v. *Tate,* 135 Tenn., 509, 188 S. W., 54; L. R. A. 1916F 935, wherein it was held that the lien created by the Act of 1905 was not superior to the rights of the conditional vendor of the automobile. It was there held that the statute does not undertake to provide for a proceeding *in rem,* against the automobile as the *res,* and that a personal action against the owner is necessary for the adjudication of the lien and the subjection of the property to its satisfaction. The court observed: "It might with no inconsiderable reason be urged that the only right under the police power was one to regulate by way of punishment the owner in possession and dominion and control for an unlawful use of that which was designed for a legitimate use." Referring to the consistent legislative policy of the state to protect liens for purchase money, a presumption was indulged that it was not intended to create a lien which

would by inference prejudice the antecedent lien of a vendor. The court concluded: "We therefore are of opinion that only the interest of the vendee, as the owner of the automobile, was liable to be attached and subjected. . . . The 'spirit of the provision is to subject that which is owned by him who has it in his own power to select the agency by which the machine is propelled or to be propelled. . . . The statute does not operate a forfeiture or subjection of the interest of one who has it not in his power to protect his interest by any exercise of discretion as to the movements of the machine, or as to who shall move it."

Plaintiff's contention that suit and attachment are not essential, as conditions precedent, to the coming into existence of the lien, but that by operation of the statute the lien attached to the automobile and was fixed at the time of the accident and injury, seems to be sustained by *Keller* v. *Federal, etc., Truck Co., supra*. But the question remains whether such a lien is superior to the rights of a *bona fide* purchaser without notice, acquired prior to the levy of an attachment on the property.

The intervening rights of such a purchaser are strongly supported by the language of the opinion of this court in *Parker-Harris Co.* v. *Tate, supra*, stating the underlying reason for the imposition of this statutory liability upon the owner, as the possessor of the right of dominion and control of the automobile at the time of the infliction of the injury giving rise to the lien.

The rights of such purchaser are also supported by the judicially recognized policy of the state against the extension of secret liens. "It is the policy of our law to discourage secret liens, as against innocent purchasers and creditors." *Anderson* v. *Talbott*, 48 Tenn.,

407, 411; *Hammock* v. *Qualls,* 139 Tenn., 388, 394; *Robinson Bros. Motor Co.* v. *Knight,* 154 Tenn., 631.

Liens of mechanics and artisans at common law were enforceable only so long as possession of the property was held by the lien claimant, the reason for the rule, as stated by Kent, being significant to the inquiry here: "If the lien was to follow the goods after they had been sold or delivered, the incumbrance would become excessively inconvenient to the freedom of trade and the safety of purchasers." 2 Kent's Com. 639.

We have been able to discover no similar statute save that of South Carolina, which expressly provides that the lien created shall be "next in priority to the lien for state and county taxes upon such motor vehicle." *Merchants & Planters Bank* v. *Brigman,* 106 S. C., 362, 91 S. E., 332, L. R. A. 1917E 925. In *Tate* v. *Brazier,* 115 S. C., 283, 105 S. E., 413, the Supreme Court of that state said: "The act of the Legislature is plain and specific, and gives the plaintiff a lien, and under the act plea of innocent purchaser cannot avail the appellant."

In the South Carolina statute the legislative intent to give precedence to the lien is affirmatively expressed. Any such intent in our statute must be drawn therefrom by inference. This court found such an inference unjustified as against the antecedent right of a conditional vendor, and much of the reasoning of the court in the case so holding argues against giving precedence to the lien as superior to the rights of a subsequent *bona fide* purchaser, acquired prior to the filing of suit to enforce the lien.

The owner's liability to the plaintiff is in the nature of a penalty, arising out of the use to which he permitted his property to be put. The lien is of fortuitous origin, not arising out of contract, nor is it one created in aid of

industry or trade. The lienor has contributed nothing to the value or security of the property subject to the lien, as in the case of landlords, mechanics, agistors, etc., for whose benefit statutory liens are created, and liens created for those purposes furnish no clear analogy here.. Diligence is not required in the enforcement of the lien, and in cases of property damage, it may be invoked in a suit instituted at any time within three years from the accrual of the right of action, an unprecedented interval for the running of an unregistered lien, valid against innocent purchasers of personal property. Enforcement of the lien against a *bona fide* purchaser would only cause pecuniary loss to him, in an effort to compensate another for a wrong for which such purchaser is not responsible, either directly or indirectly. In the correction of one wrong, another of equal injustice would result.

"When a lien comes into existence by force of a statute, it must be measured by that statute, and can have no greater force than the statute gives it." *Parker-Harris Co.* v. *Tate, supra.*

Since the statute does not speak affirmatively with respect to these conflicting rights, we are of the opinion that the rights of the purchaser acquired in good faith prior to institution of the suit to enforce the lien, must be held superior to the lien claimed by plaintiff.

The circuit court enforced the lien by rendering judgment for the value of the property against the seller, the owner at the date of the injury to plaintiff, as well as against the purchaser.

In *Core* v. *Resha,* 140 Tenn., 408, 413, with reference to the Act of 1905, this Court said: "The act deals, not with the liability of the owner in an action *in personam* for damages, or with him from the standpoint of employer, but with the subjection of property of the

owner—the automobile—to a lien when he is found to have permitted its use.''

We recognize the total absence of personal liability on the part of the Rent-A-Car Company, merely as the owner of the automobile rented to the person driving it when plaintiff was injured, but the fact remains that plaintiff was given a lien on the automobile in its possession, and plaintiff is prevented from the enforcement and satisfaction of his lien by that company's sale of the automobile to a *bona fide* purchaser. The owner received the stipulated value of the lien in the sale, and this value, in lieu of the automobile, should be rendered to the plaintiff. The lien was a valuable right in plaintiff, vested by the statute, and was converted to the owner's use by the sale of the automobile. The plaintiff is entitled to recover the value of the right thus wrongfully converted. *Hugo State Bank* v. *Hugo National Bank*, — Okla., —, 220 Pac., 868; *Moore* v. *Carey*, — Tex., —, 269 S. W., 75, 39 A. L. R., 1247; 11 C. J., 9.

We are not now concerned with the form of action by which a plaintiff may ordinarily seek and recover such relief. All the material facts were stipulated by the parties in the trial court, and the appeal is by the defendants, against each of whom the circuit court rendered a personal judgment for the agreed value of the property subject to the lien, notwithstanding the declaration asked only for a judgment enforcing the lien. In view of the stipulation, the form of the judgment was proper, and was not questioned by the assignments of error. Shannon's Code, sections 4702, 4703.

For the reasons stated, the judgment of the circuit court against the Hull-Dobbs-Price Company will be reversed and the case dismissed as to it. The judgment

against the Rent-A-Car Company will be affirmed, to which will be added the costs of the appeal. The costs of the circuit court will be paid from the proceeds of the judgment, as directed by the circuit court.